Raymond COLE and Paul Cole, Jr., Plaintiffs-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

April 24, 1974.

Certiorari Denied by Supreme Court

July 29, 1974.

James R. Ralph, Memphis, Jack Woodall, Jackson, for plaintiffs in error.

David M. Pack, Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, Whit LaFon, Asst. Dist. Atty. Gen., Jackson, for defendant in error.

## OPINION

GALBREATH, Judge.

Plaintiffs in error, Raymond Cole and Paul Cole, Jr., appeal from their convictions for involuntary manslaughter and resulting sentences of not less than one nor more than five years in the penitentiary.

The jury had before it credible, albeit disputed, evidence that the victim was killed when his automobile was struck by a 1965 Chrysler being driven at a high rate

of speed by Raymond Cole while racing a 1965 Ford Mustang being driven by his brother Paul Cole, Jr. Both of the defendants' automobiles were observed by witnesses speeding in a northerly direction around a curve on Hollywood Street in Jackson where one collided with the deceased's automobile crossing their paths on Arlington Street from the right. The defendant Paul Cole's automobile passed in front of the victim's car, but the Chrysler plowed into its left side knocking it into the air and throwing it some eighty-three feet onto a bridge abutment. The deceased was not breathing when the ambulance driver examined him and his heart stopped beating, but both signs of life reappeared and the victim lived until shortly after he was taken to the emergency room of a Memphis hospital.

From the above summary of facts it is readily apparent that the jury was justified in believing that the deceased was killed as a result of the defendants' operating their respective motor vehicles in such a reckless and unlawful manner and without due caution so that death was the natural or probable consequence of such conduct. The assignments of error addressing themselves to the sufficiency of the proof are overruled.

 We find nothing improper in a physician testifying that in his opinion the deceased died of injuries incurred in the accident even though the doctor was not in attendance at the time of death and was a specialist in the field of orthopedic surgery instead of neurosurgery. A physician, being an expert witness, is entitled to rely on the history of a person whose injuries he is relating to a jury, and in any event the lay testimony of the ambulance attendant and other witnesses who described in detail the fatal injuries was sufficient to establish the cause of death beyond any reasonable doubt.

 There was no error in the testimony of the deceased's mother to the effect that she was notified at about three o'clock that her son was dead. She accompanied the victim to the Baptist Hospital in Memphis and observed his condition up until the time of death, and the fact that someone advised her that death had occurred under such circumstances is not such hearsay as would taint the verdict. Whether the deceased died within the hour is immaterial so long as the jury can determine the death resulted from the injuries inflicted by the defendants. The common law provides that death must ensue within a year and a day from the infliction of the mortal wound to constitute punishable homicide. 40 Am.Jur.2d Homicide § 14. It would have been incredible if the victim had not been severely injured in the accident as, indeed, was the defendant Raymond Cole also, and the jury was amply justified in attributing his death to the acts of the defendants. We find no error in the court's sustaining an objection to cross-examination concerning an alleged accident in which the victim may have been involved months before his death. There was no objection to this ruling by the court, and we find no relevancy in the inquiry since there is no suggestion that the deceased was in poor health prior to the accident as a result of any prior mishap. As aforesaid, no reasonable doubt as to the cause of death could have been engendered by the proof.

 The principal contention advanced on behalf of the plaintiffs in error is that the indictment was fatally defective due to an obvious clerical error. In charging that the defendants violated the statute proscribing the practice popularly termed "drag racing," the language of the defining section of T.C.A. § 59–1040(a) was copied in the indictment but mistakenly cited as "subsection (a) of Section 59–104 of the Tennessee Code Annotated."

Although the insufficiency or defectiveness of the indictment was not relied on as error on the defendants' motion for new trial and therefore should not be considered here (Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780), we feel the trial judge

was eminently correct in overruling a motion to dismiss the indictment on the grounds stated above since under such circumstances the inadvertence should be treated as mere surplusage. McCracken v. State, Tenn.Cr.App., 489 S.W.2d 48

We find no merit in the *Miranda* issue raised by assigned error in the admission of testimony relating to statements made to the investigating officer by the defendant Paul Cole, Jr. admitting that he was the driver of the Mustang automobile in which he returned to the area of the crash. The defendant was not in custody and undergoing the type of potentially coercive interrogation sought to be safeguarded against by the holdings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, but was more in the nature of a general inquiry at the scene of a traffic accident during which little danger is presented that the constitutional rights against self incrimination or the right to counsel will be trenched upon by any deliberate actions of the officer. That a potential defendant in a criminal case may, before he has become the object of accusatory inquiry, voluntarily give such information to police as he wishes is made clear by the United States Supreme Court in *Miranda*:

> "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

> " . . . There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make.

Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

Also without merit are contentions of the defendants that a diagram prepared by an officer depicting the scene of the accident was not correct as to scale and other detail and that cross-examination of a witness the defense sought to show was not in position to see the automobiles long enough to accurately testify concerning the speed and other factors was unduly restricted by the trial judge. The officer admitted that the diagram he had prepared of the accident scene was not exact and the jury could judge the credibility of his testimony and the quality of the drawing in weighing his testimony, and the trial judge correctly admonished against repetitive cross-examination. Such matters are largely within the discretion of the trial judge in his conduct of a trial, and his exercise of that discretion will not be disturbed on review except when an abuse is clearly demonstrated.

Although not set out in the motion for new trial, we find nothing erroneous in the charge of the trial judge complained of by defendants in error that drag racing constitutes *malum in se* and that contributory negligence on the part of the victim, if any, would constitute no defense, and that both defendants, if found to have participated in drag racing, would be principals in the homicide. It has long been the law that such obvious and inherently dangerous activities as driving a motor vehicle while under the influence of an intoxicant (Keller v. State, 155 Tenn. 633, 299 S.W. 803), while drowsy (Grindstaff v. State, 214 Tenn. 58, 377 S.W.2d 921), and drag racing itself (Stallard v. State, 209 Tenn. 13, 348 S.W.2d 489) were acts *mala in se*.

An offense may be dangerous in and of itself and also the subject of a prohibiting statute. Most serious crimes are and are readily distinguishable from those

generally termed *malum prohibitum* such as driving without a license or in the wrong direction on a one way street in an otherwise safe manner. For a treatment of the distinctions between acts that are *mala in se* and *mala prohibita* see Whitlock v. State, 187 Tenn. 522, 216 S.W.2d 22.

It appears that the trial judge overlooked charging the provisions of and the jury failed to fix the minimum sentence as provided by T.C.A. § 40–2707 as amended by Chapter 163 of the Acts of 1973. At most this was harmless error and may well have been beneficial error, since under a correct charge the jury could not have fixed a lesser period of confinement in the penitentiary than one year, while under the new law minimum sentences of two years could have been imposed.

We have carefully examined all other matters call to our attention and revealed by the record and, finding no reversible error, we affirm the judgment of the trial court.

OLIVER and MITCHELL, JJ., concur.